DECISION
¶ 1} Relator, Teresa Keener ("relator"), has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission"), to vacate its order which denied relator's application for permanent total disability ("PTD") compensation, and ordering the commission to find that she is entitled to that compensation.
¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this case was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision, the magistrate found that the commission did not abuse its discretion in denying relator's request for PTD compensation. Therefore, the magistrate recommended that this court deny relator's request for a writ of mandamus.
¶ 3} In her objections to the magistrate's decision, relator essentially reargues the same points addressed in the magistrate's decision.
¶ 4} Following an independent review of the matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, relator's objections to the magistrate's decision are overruled and we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny relator's request for a writ of mandamus.
Writ of mandamus denied.
Petree and Sadler, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. Teresa L. Keener, :
Relator, :
v. : No. 05AP-963
Farnsworth Associates, Inc. and : (REGULAR CALENDAR) Industrial Commission of Ohio, :
Respondents. :
 MAGISTRATE'S DECISION Rendered on April 11, 2006 Regas Haag, Ltd., and John S. Regas, for relator.
Jim Petro, Attorney General, and Eric J. Tarbox, for respondent Industrial Commission of Ohio.
 IN MANDAMUS ¶ 5} Relator, Teresa L. Keener, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied her application for permanent total disability ("PTD") compensation and ordering the commission to find that she is entitled to that compensation.
Findings of Fact:
¶ 6} 1. Relator has sustained three work-related injuries and her claims have been allowed as follows: 02-802146 "concussion with out coma, sprain of neck[;] 89-60357 — sprain low back [and] 90-36515 — dorsal and lumbar strain; lumbar contusion."
¶ 7} 2. Her most recent injury occurred on January 25, 2002. At that time, relator fell from a chair and struck her head.
¶ 8} 3. Relator has not worked since January 25, 2002. At the time of that injury, relator was 40 years old.
¶ 9} 4. Relator participated in vocational rehabilitation services through the Ohio Bureau of Workers' Compensation ("BWC"). Through the BWC's program, relator began a job search with potential employers. Her file was closed after it was determined that relator was fully trained and capable of continuing her job search on her own.
¶ 10} 5. On April 21, 2004, relator submitted her application for PTD compensation. On that application, relator indicated that, although she had not graduated from high school, she had obtained a GED. Relator indicated that prior work history began in 1981 when she worked for an employment service. From 1984 to 1994, relator was a bindery worker for Sieple Lythograph. Beginning in 2001, relator began doing tax preparation work for H R Block.
¶ 11} 6. In support of her application for PTD compensation, relator attached the February 12, 2004 report of Barry S. Layton, Ph.D. In his report, Dr. Layton noted that relator's current complaints include excruciating headaches at least once a week and lasting up to two days; blurry eyesight; poor sense of smell; and ringing in both ears. Relator reports cognitive difficulties as well. Dr. Layton administered certain tests, the results of which were consistent with a person who had sustained a concussion. Specifically, Dr. Layton noted that relator was moderately to severely impaired in her ability to hold information in the face of distraction and that the examination results were consistent with relator's self-reporting that she is forgetful. Dr. Layton also noted that relator was impaired in her ability to match photographs of faces in a multiple-choice format and again indicated that her impairments were consistent with traumatic brain injury incurred in concussion injuries. Dr. Layton concluded that relator's current impairments surpass a level of total vocational disability and that, in his opinion, relator is permanently and totally disabled as a result of the effects of the severe concussion.
¶ 12} 7. The record also contains the February 25, 2003 report of Richard S. Kaplan, M.D. Dr. Kaplan opined that relator had reached maximum medical improvement ("MMI"), and that any further symptoms and treatment would not be related to the allowed conditions in the claim. He further opined that relator would be able to return to her former position of employment.
¶ 13} 8. The record also contains the June 22, 2004 report of Timothy J. Fallon, M.D., who also found that relator had reached MMI, and assessed a three percent whole person impairment for the allowed condition of concussion without coma and, relative to all of relator's allowed conditions, he assessed a 20 percent whole person impairment and noted that relator was capable of performing sedentary work.
¶ 14} 9. Relator was also examined by Lee Howard, Ph.D. In his November 10, 2004 report, Dr. Howard indicated the medical records which he reviewed, took a history from relator, administered certain tests, and reached certain conclusions relative thereto. Dr. Howard concluded that certain discrepancies in his testing could only be explained by concluding that relator was simulating her head injury symptoms. Dr. Howard noted that relator's embellishment and spontaneity are extensive and that he believed she was under-performing and magnifying her symptoms. Dr. Howard considered the test scores invalid and concluded that they may be a function of less than optimal effort as opposed to any actual neuropsychological limitation. Dr. Howard administered one test which yielded a positive malingering result. He also noted that, although relator indicates that she lost consciousness at the time of her injury, the medical records which he reviewed did not indicate a loss of consciousness. Dr. Howard concluded that relator had reached MMI, indicated that while it was difficult to accurately determine, he concluded nevertheless that she had a three percent permanent partial impairment, and that there would be no neuropsychological limitations in her ability to perform work activities. Dr. Howard concluded that relator could return to her former position of employment or any other sustained remunerative employment for which she was otherwise qualified.
¶ 15} 10. A vocational assessment was prepared by Mark A. Anderson dated August 30, 2004. Mr. Anderson indicated that he administered the SRA math and reading indexes to relator as part of his evaluation and that her math aptitude placed her below the third grade level while her reading aptitude placed her at the mid-third grade level. He indicated that relator was unable to perform any clerical activities. The results of the Perdue Pegboard Manual Dexterity test were well below the first percentile. In summary, Mr. Anderson concluded that relator was not employable.
¶ 16} 11. Relator's application was heard before a staff hearing officer ("SHO") on April 5, 2005, and resulted in an order denying the requested relief. The SHO relied upon the medical report of Dr. Fallon to conclude that relator was capable of performing at a sedentary exertional level. The SHO also relied upon the report of Dr. Howard and his conclusions that relator did not have any neurological limitations in her ability to perform work activities. The SHO also cited the rehabilitation division's 2003 report wherein it was noted that her file was closed after she had demonstrated an ability to make regular face-to-face contacts with potential employers and it was determined that she was capable of continuing a job search on her own. With regard to the nonmedical disability factors, the commission provided its own analysis as follows:
It is found that the claimant's age of 44 is an asset to her being able to find work within her restrictions of performing sedentary work. She is young enough to learn new skills, as she demonstrated only four years ago when she obtained her GED learned how to prepare tax forms. It is noted that although the claimant only completed the tenth grade, she achieved excellent grades, thereby indicating that she is very intelligent. This is found to be a very positive attribute regarding her ability to find sedentary employment.
Her work as a clerk in tax preparation company establishes that she is able to perform work in an office setting. Her familiarity with office procedures and equipment undoubtedly will enhance her ability to find work. While the claimant's prior jobs were much more physically demanding and did not provide her with any significant transferable skills, she has proved her ability to successfully transition to a different life style.
When considering the claimant's relatively young age, her superior grades and GED, her prior work experience in an office setting, and her successful completion of the vocational rehabilitation program, it is found that she is capable of performing some sustained remunerative employment within her sedentary work restrictions. Therefore, the claimant's application for permanent and total disability compensation is denied.
¶ 17} 12. Relator's request for reconsideration was denied by order of the commission mailed June 15, 2005.
¶ 18} 13. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
¶ 19} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State exrel. Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
¶ 20} The relevant inquiry in a determination of permanent total disability is the claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus.Comm. (1994), 69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments, but also the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephensonv. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v.Indus. Comm. (1991), 57 Ohio St.3d 203.
¶ 21} Relator contends that the commission's order denying her application for PTD compensation is not supported by any evidence. Relator argues that Dr. Howard's medical report is inconsistent, in part, because he noted several inconsistencies in his testing of relator. Relator contends that Dr. Howard's conclusion cannot be relied upon because he explained all the inconsistencies and negative results as being the product of malingering or other non-neuropsychological causes. Relator argues that this is improper.
¶ 22} It is undisputed that equivocal or internally inconsistent medical opinions do not constitute "some evidence" upon which the commission may rely. State ex rel. Eberhardt v.Flxible Corp. (1994), 70 Ohio St.3d 649. Equivocation occurs when a doctor renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement. Id. at 657. Statements which are uncertain, contradictory or later repudiated are unreliable because they reveal that a doctor is not sure what he means. Id.
¶ 23} In the present case, a review of Dr. Howard's report indicates that Dr. Howard is not unclear in his conclusions and his report is not equivocal. Based upon the testing which Dr. Howard administered, including a malingering test, Dr. Howard concluded that relator was either not putting forth her best effort, she was malingering, or was simulating symptoms one would associate from the type of injury which she sustained. Dr. Howard concluded that the inconsistencies in the results occurred because relator did not have as severe a condition and did not actually suffer from all of the symptoms which she claimed and did not have neuropsychological limitations. Instead of being confused, Dr. Howard was very certain as to his opinion.
¶ 24} Relator argues that, in relying upon the report of Dr. Howard, the commission rejected the other medical evidence in the file. However, it is not an abuse of discretion for the commission to rely upon one report and reject other reports. Furthermore, the commission is not required to explain why it finds one report to be more credible than another report or why it finds other reports not to be as credible. As long as the medical report relied upon by the commission is unequivocal, it can constitute some evidence upon which the commission can rely. Having found that Dr. Howard's report was not equivocal, the magistrate concludes that it did constitute some evidence upon which the commission could rely in denying relator's application for PTD compensation.
¶ 25} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in denying her application for PTD compensation and relator's request for a writ of mandamus should be denied.